*gmr*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDY THAYER, | ) |
| | ) |
| Plaintiff, | ) No. 07 C 1290 |
| | ) |
| v. | ) Judge John W. Darrah |
| | ) |
| COMMANDER RALPH CHICZEWSKI, | ) |
| UNKNOWN POLICE OFFICERS and | ) |
| EMPLOYEES OF THE CITY OF CHICAGO, | ) |
| and the CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Andy Thayer, filed a claim under 42 U.S.C. § 1983 against the Defendants, Commander Ralph Chiczewski, Unknown Police Officers and Employees of the City of Chicago, and the City of Chicago (collectively, "the Defendants"). Presently before the Court is the Defendants' Motion to Dismiss Plaintiff's Complaint in its entirety.

## BACKGROUND

The Court takes judicial notice of the prior judicial proceedings regarding Plaintiff's state criminal arrest and conviction, including all matters of public record related to Plaintiff's proceedings. *See Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994) (judicial notice may be taken of matters of public record). These prior proceedings, as well as the Complaint, support the following summary of the alleged operative conduct of the parties.

Plaintiff has been involved in public rallies, marches, and press conferences concerning civil rights and political issues for the past several years. On March 20, 2003, the night after the United States' invasion of Iraq, Plaintiff was part of an anti-war demonstration in Chicago that

led to the mass detention of eight hundred citizens and the arrest of more than five hundred citizens by the Chicago Police Department. For the last four years, Plaintiff has continued to protest the United States' involvement in Iraq. As a result of these activities, Plaintiff is well known to members of the Chicago Police Department, including Commander Chiczewski.

In January 2005, prior to the second anniversary of the United States' invasion of Iraq, Plaintiff, on behalf of a large anti-war coalition, applied for a permit to conduct a march down Michigan Avenue in the City of Chicago. The permit application was rejected by the City of Chicago. After the permit was rejected, Plaintiff and other activists organized a press conference to take place at noon on March 19, 2005, on a sidewalk at the southwest corner of Oak Street and Michigan Avenue. Two days before the press conference, Chicago Police Officers assigned to the City Hall Task Force informed Alderman Joe Moore, one of the scheduled speakers at the press conference, that he and other individuals would be arrested if they attempted to hold a press conference. Alderman Moore, therefore, decided not to speak at the press conference.

On March 19, 2005, the day of the press conference, Plaintiff attended a separate protest sponsored by the Gay Liberation Network. Plaintiff encountered Commander Chiczewski at the rally. Commander Chiczewski allegedly threatened Plaintiff with arrest if Plaintiff "even as much as showed up on Michigan Avenue later that day" for the press conference. At the press conference at noon, approximately two hundred uniformed officers and riot gear officers with batons were present. These officers outnumbered those attending the press conference. Despite the heavy police presence, several speakers attended and spoke at the press conference. Among the speakers was Bill Massey, a Korean War veteran and member of ANSWER Coalition, who told the media and the crowd, "We have been threatened with arrest for holding this press conference. We are holding this press conference." Patricia Vogel and the Reverend Dan Dale

2

heard Town Hall District Officer Nenad Markovich say that the police were targeting Plaintiff for arrest that day and that police would "wade into the crowd" to arrest Plaintiff, if necessary. After three individuals spoke, Plaintiff began to address the crowd. Plaintiff spoke no more than two sentences before he was grabbed by Commander Chiczewski, placed under arrest, and taken into custody. Prior to his arrest, Plaintiff was not given any order to disperse by Commander Chiczewski or any other police officer. As Plaintiff was being arrested, he put up no resistance but began to go limp until Commander Chiczewski told him that he would be charged with resisting arrest if he continued to be limp. Plaintiff immediately ceased going limp and was taken away on his feet. Plaintiff was charged with resisting arrest and disorderly conduct. The disorderly conduct charge for which Plaintiff was arrested under, Chicago Municipal Code MCC8-4-010 ("the Ordinance"), states:

> A person commits disorderly conduct when he knowingly:
> (d) Fails to obey a lawful order of dispersal by a person known by him to be a peace officer under circumstances where three or more persons are committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause substantial harm or serious inconvenience, annoyance, or alarm; . . .

MCC8-4-101(d).

The City of Chicago brought a charge against Plaintiff in the Circuit Court of Cook County for violation of the Ordinance. Prior to trial on June 1, 2005, Plaintiff filed a motion to dismiss the complaint and supporting memorandum, asserting that the Ordinance is unconstitutionally vague and overbroad in violation of the First and Fourteenth Amendments to the United States Constitution and in violation of Sections 2, 4, and 5 of the Illinois Constitution. Plaintiff's motion was denied in a written opinion dated March 10, 2006. On October 26, 2006, Plaintiff was convicted of disorderly conduct in the Circuit Court of Cook County, Illinois.

3

Plaintiff filed a motion for judgment notwithstanding the verdict or alternatively a request for a new trial, again asserting that the Ordinance is vague and overbroad, in violation of the U.S. and Illinois Constitutions, respectively. Plaintiff filed this Complaint on March 7, 2007. On March 20, 2007, Plaintiff's motions for judgment notwithstanding the verdict or request for a new trial were denied by the Circuit Court. On April 18, 2007, Plaintiff appealed his conviction to the Illinois Appellate Court but withdrew his notice of appeal on June 5, 2007.

## ANALYSIS

In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, ___U.S.___, ___, 127 S. Ct. 1955, 1964 (2007) (*Bell Atlantic*), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (alteration in *Bell Atlantic*). "Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

### *Res judicata*

The Defendants argue that Plaintiff raised all the claims asserted in this Complaint in his state court proceedings and, thus, all claims are to be barred by *res judicata*. Plaintiff argues that his constitutional challenges are not barred and that he is entitled to a federal forum to seek redress for the alleged deprivation of his rights.

4

This Court must apply the preclusion law of the state that rendered judgment in order to determine if *res judicata* is applicable. *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007) (*Hicks*), *citing Matsushita Elec. Indus. Co., Ltd. v. Espstein*, 516 U.S. 367, 373 (1996) and *E.B. Harper & Co., Inc. v. Nortek, Inc.*, 104 F.3d 913, 921 (7th Cir. 1997). Illinois law holds that "a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same case of action." *Hicks*, 479 F.3d at 471, *quoting River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 703 N.E.2d 883, 889 (1998) (*River Park*).

Under Illinois law, three requirements must be met before *res judicata* will preclude a cause of action: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Hicks*, 479 F.3d at 471, *quoting Nowak v. St. Rita High Sch.*, 197 Ill.2d 381, 757 N.E.2d 471, 477 (2001). *Res judicata* bars claims or defenses that were actually raised or could have been raised in the prior proceeding. *River Park*, 703 N.E.2d at 889; *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 529 (7th Cir. 2000). An exception to *res judicata* exists "if the plaintiff did not have a full and fair opportunity to litigate his claim in state court. A plaintiff is afforded a full and fair opportunity to litigate his claims so long as the state court proceedings complied with the minimum procedural requirements of the Due Process Clause." *Licari v. City of Chicago*, 298 F.3d 664, 667 (7th Cir. 2002) (*Licari*).

First, this Court must address whether the Illinois state decision is a final judgment. As set out above, on October 26, 2006, Plaintiff was convicted under the Ordinance and petitioned the Circuit Court for a judgment notwithstanding the verdict or alternatively a new trial. On March 20, 2007, these motions were denied by the Circuit Court. Plaintiff appealed his

5

conviction to the Illinois Appellate Court but withdrew his notice of appeal on June 5, 2007. In Illinois, a judgment is final when an appeal is not perfected or pursued. *Robertson v. Winnebago County Forest Preserve*, 301 Ill. App. 3d 520 (1998). The first element of *res judicata* is satisfied.

Next, this Court must determine if there is identity of the parties. The Defendants contend that this action involves the same parties, or their privies, as in the state court action. Plaintiff did not brief this issue for the Court. As the Seventh Circuit recognized in *Mandarino v. Pollard*, 718 F.2d 845, 850 (7th Cir. 1983), and reaffirmed in *Licari*, 298 F.3d at 667, under Illinois law a government and its officials are in privity for purposes of *res judicata*. Thus, there is an identity of parties here.

Finally, this Court must determine whether there exists an identity of the causes of action. Illinois applies the "transactional" test, which dictates that different theories of relief are to be considered a single cause of action if a single group of operative facts gives rise to the request for relief. *River Park*, 703 N.E.2d at 893. "[F]or purposes of a section 1983 action, the rule of *res judicata* applies to those issues actually litigated as well as those that could have been but were not litigated in the state court proceeding." *Licari*, 298 F.3d at 667, *citing Pliska v. City of Stevens Point, Wis.*, 823 F.2d 1168, 1172 (7th Cir. 1987) (*Pliska*). The Defendants seek to bar all of Plaintiff's claims.

Count I alleges that the Defendants violated his First and Fourteenth Amendment rights to the United States Constitution and sections 2, 4, and 5 of the Illinois Constitution through enforcement of the Ordinance. In *Pliska*, plaintiffs collectively were prosecuted and convicted on three separate occasions under a city ordinance requiring an owner of a building to store and dispose of rubbish in a clean and sanitary manner. On the second and third occasion, plaintiffs,

through counsel, filed a motion to dismiss the charges, challenging the constitutionality of the ordinance. *Pliska*, 823 F.2d at 1171. The motions were denied, and the plaintiffs were convicted and fined. *Pliska*, 823 F.2d at 1171. The plaintiffs brought a § 1983 action against the city and a police officer, alleging violations of their First, Fourth, Ninth, and Fourteenth Amendment rights, asserting that the ordinance was unconstitutionally vague and overbroad on its face and as applied to them. *Pliska*, 823 F.2d at 1171-72. The district court concluded that the plaintiffs' claims were barred by *res judicata*; and the Seventh Circuit affirmed, holding that "[s]ince all of the challenges to the facial validity of the ordinances were or could have been presented to the circuit court," the claims were thus barred by *res judicata*. *Pliska*, 823 F.2d at 1172. Likewise, in *Studio Art Theatre of Evansville, Inc. v. City of Evansville, Indiana*, 76 F.3d 128, 129 (1996) (*Studio Art*), plaintiffs argued in their state criminal proceedings that the Indiana's obscenity statute violated their First and Fourteenth Amendment rights. The plaintiffs were convicted in the state criminal proceeding and brought a 28 U.S.C. § 1983 and 28 U.S.C. § 2201 action in federal court, again challenging the constitutionality of the state statute. *Studio Art*, 76 F.3d at 129. The district court dismissed the action, relying on the doctrines of *res judicata* and collateral estoppel. *Studio Art*, 76 F.3d at 130. As in *Pliska*, the Seventh Circuit affirmed that district court's dismissal, holding that the plaintiffs were barred from re-litigating their constitutional challenges in federal court. *Studio Art*, 76 F.3d at 131.

In the instant action, Plaintiff's claims under Count I stem from the incident for which Plaintiff was arrested by the Defendants. Plaintiff challenged the constitutionality of the Ordinance upon which the arrest was based in the state criminal proceedings. Plaintiff filed a motion to dismiss on these grounds, which was denied in a written opinion. Plaintiff then raised these same issues again when he moved for judgment notwithstanding the verdict or

7

alternatively requesting a new trial. Based on the state criminal proceedings, Plaintiff had a full and fair opportunity to litigate the constitutionality of the Ordinance. In accordance with the holdings in *Pliska* and *Studio Art*, Plaintiff is barred from re-litigating the constitutionality of the Ordinance in federal court. Thus, as to Count I, the second requirement of *res judicata* is satisfied; and Plaintiff's claim is barred.

Count II alleges that the Defendants retaliated against Plaintiff for his exercise of his First Amendment rights. Count III alleges that the Defendants acted in concert with other co-conspirators and reached an agreement to deprive Plaintiff of his constitutional rights. Count IV alleges that the Defendants violated his rights to equal protection and due process. Count V alleges that the City of Chicago and the Chicago Police Department, as a matter of both policy and practice, ordered, supervised, and condoned the suppression of First Amendment activity. Counts II through V are civil claims, seeking monetary relief. The doctrine of *res judicata* does not apply to these Counts as Plaintiff could not have raised these causes of action in the criminal state court proceeding. As a result, *res judicata* does not bar Counts II through V.

## Count III

The Defendants argue that Plaintiff has failed to state a claim for conspiracy under § 1983, as determined by the Supreme Court's decision in *Bell Atlantic*, which applied the Fed. R. Civ. P. 8(a) pleading requirement in the context of a Sherman Act conspiracy. *Bell Atlantic*, 127 S.Ct. at 1964-95. The Defendants also contend that the intra-corporate doctrine should extend to § 1983 claims. Plaintiff counters that the pleading requirements to bring a claim for conspiracy are satisfied and that the intra-corporate doctrine is inapplicable to the present situation for several reasons.

In order to state a conspiracy claim under § 1983, a plaintiff must allege: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007), *quoting Williams v. Seniff,* 342 F.3d 774, 785 (7th Cir. 2003) (internal citation and quotation marks omitted). Plaintiff's Complaint does not allege that private individual(s) engaged in an action to deprive him of his constitutional rights. All of the Defendants in this action are state actors; and, thus, Plaintiff cannot proceed under this theory of liability.

*Count V-Monell Claim*

For the City, a municipality, to be liable under § 1983, Plaintiff must show that the allegedly unconstitutional acts were taken pursuant to City policy. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978) (*Monell*). "Misbehaving employees are responsible for their own conduct, 'units of local government are responsible only for their policies rather than misconduct by their workers.'" *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007), *quoting in part Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007). The City may not be held liable under § 1983 based on a theory of *respondeat superior* or vicarious liability. *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir.2007), *citing Monell*, 436 U.S. at 694. In order for the City to be liable under § 1983, Plaintiff must show either "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional

injury was caused by a person with final policymaking authority." *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997) (*Roach*), quoting *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

In this case, the complaining action was an arrest for violation of the Ordinance. Plaintiff contends that Commander Chiczewski and other unknown Police Officers and employees of the City of Chicago "had final policymaking authority" and arrested him in retaliation for his exercise of his First Amendment rights. Plaintiff argues that in "both policy and practice, the City of Chicago directly encourages . . . the suppression of First Amendment activity."

However, "[o]nly those individuals with the requisite policymaking authority are capable of establishing 'official policy' as required by *Monell*." *Charted v. City of Milwaukee*, 356 F.3d 740, 748-49 (7th Cir. 2004), citing *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1324-25 (7th Cir. 1993)) (*Cornfield*). "In order to have final policymaking authority, an official must possess responsibility for making law or setting policy, that is, authority to adopt rules for the conduct of others." *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004) (internal quotations omitted), quoting *Rashe v. Village of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003). A person's status as a final policymaker is a matter to be determined by state or local law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988); *Kujawski v. Bd. of Comm'rs*, 183 F.3d 734, 737 (7th Cir. 1999). Illinois state law provides the corporate authority of a municipality is its "city council or similar body . . ." 24 ILCS 1-1-2(2). Seventh Circuit case law has acknowledged that Illinois does not support the conclusion that police officers, even a police superintendent, constitute a final policymaker. *See Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992) (concluding that the Superintendent of Police did not have policymaking authority); *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001)

(affirming that Chicago Police Department superior officers and supervisors are not policymakers). Commander Chiczewski and unknown members of the police department do not qualify as policymakers for the City. In Count II, Plaintiff also alleges that unknown City of Chicago officials retaliated against him for his exercise of his First Amendment right. However, the Complaint contains no allegations supporting the inference that other City of Chicago officials were involved in Plaintiff's arrest on March 19, 2005. As with Commander Chiczewski and unknown Chicago Police Officers, Plaintiff has not identified any state or local law, or custom having the force of law, that bestows these named Defendants the ability to be final policymakers.

Next, addressing the "widespread practice" prong of *Monell's* municipal liability test, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (*Tuttle*). The City will only be liable if the deprivation was the result of "custom or policy." *Tuttle*, 471 U.S. at 817. "If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). Here, Plaintiff alleges four instances of conduct by the Defendants, which he suggests supports a finding of "widespread practice": (1) the March 20, 2003 mass detention of eight hundred citizens and the arrest of more than five hundred by the Chicago Police Department during an anti-war protest of the Iraq invasion;

11

(2) Plaintiff's arrest on March 19, 2005; (3) the threats made to Alderman Moore that he would be arrested if he spoke at the press conference; and (4) threats Plaintiff received prior to speaking at the press conference.

The City's policy on First Amendment conduct is governed by a consent decree. *See Alliance to End Repression v. City of Chicago*, 561 F. Supp. 537, 560 (N.D. Ill 1982) (*Alliance*). The modified consent decree holds that: "No agency or agent of the City of Chicago shall investigate, prosecute, disrupt, interfere with, or harass any persons for the purpose of punishing or retaliating against that person for engaging in conduct protected by the First Amendment." *Alliance*, 561 F.Supp. at 562. Plaintiff contends that mass detention and arrest of protestors and his arrest constitute a "widespread practice" as to evoke *Monell* liability on the City.

Although the Defendants attack the sufficiency of the evidence, it is sufficient, at this stage of the litigation, for the Plaintiff to describe the claim in sufficient detail to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp*, 127 S. Ct. at 1964. Accordingly, Plaintiff has complied with the pleading standard and can proceed under the "widespread practice" prong of liability under *Monell*.

Finally, Plaintiff seeks to assert liability against the City under a theory of deliberate indifference, which allegedly constituted a City "policy or custom" actionable under § 1983. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Plaintiff raised this argument for the first time in his Response to the Defendants' Motion to Dismiss. Plaintiff's Complaint does not allege that the City failed to properly train its police officers; and, thus, Plaintiff cannot proceed on this basis of liability.

12

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss as to Counts I and III is granted. The Defendants' Motion to Dismiss Count V is denied. Count I is dismissed with prejudice, and Count III is dismissed without prejudice.

Dated: 11-13-07

JOHN W. DARRAH
United States District Court Judge