

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDY THAYER, | ) |
| Plaintiff, | ) No. 07 C 1290 |
| v. | ) Judge John W. Darrah |
| RALPH CHICZEWSKI, et al. | ) Magistrate Judge Arlander Keys |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER[1]

Plaintiff Andy Thayer filed a civil rights action against the City of Chicago and several Chicago Police Officers, alleging that the Defendants violated his constitutional rights by arresting him on March 19, 2005, near the corner of Michigan Avenue and Oak Street in Chicago. At the time of his arrest, Mr. Thayer had assembled with others to voice his dissent about the war in Iraq and the City's denial of a permit to march down Michigan Avenue.

In addition to his claim that his arrest was unconstitutional, Mr. Thayer alleges that the City has a general policy of suppressing protests against the Iraq war that has existed since at least March 2003, that Defendants pursue this policy by deploying large numbers of officers dressed in riot gear to anti-war demonstrations, and that the City targeted Mr.

---

[1] On April 28, 2009, after this Opinion was drafted, the city submitted a Motion to File Supplemental Reply, to be heard on May 4, 2009. The City's Motion is Granted. However, after carefully reviewing the Motion, the Court concludes that the issues raised therin do not impact the substance of this decision.

Thayer for arrest on March 19, 2005, in retaliation for his criticism of the City's protest policy.

Following his March 19th arrest, Mr. Thayer was tried for disorderly conduct and resisting arrest. At his criminal trial, Mr. Thayer called Mr. Martin Conlisk as a witness. Mr. Conlisk testified that he was a correspondent for the cable-access show Labor Beat, and that he was present and filming the scene at the corner of Oak and Michigan on March 19, 2005, from approximately 11:00 a.m. until just after noon. Mr. Conlisk explained that, although he did not continuously videotape the events, he did capture footage of Mr. Thayer's arrest. Mr. Conlisk added that he had known Mr. Thayer for approximately four years.

Mr. Thayer subsequently filed his civil suit in March of 2007. During the course of discovery, the City served a subpoena on Mr. Conlisk, requesting that he produce all video and other documents in his possession, relating to: 1) the anti-war demonstration on March 19, 2005; 2) all efforts to stage anti-war marches on Michigan Avenue from 2003 to the present; and 3) any anti-war marches or demonstrations that took place in Chicago between 2003 and the present. The City's subpoena also seeks to depose Mr. Conlisk to authenticate the video and other documents he produces; to learn more about any documents he may be withholding; and to inquire as to his knowledge of efforts to

stage anti-war marches on Michigan Avenue, as well as other anti-war demonstrations in Chicago since 2003.

Discussion

Although the present motion involves discovery sought from a journalist, the Court's resolution of the motions does not implicate questions of privilege. In contrast to several other Circuits, the Seventh Circuit has rejected the notion of a federal reporter's privilege. See *McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003). Nevertheless, Mr. Conlisk insists that the Seventh Circuit's decision in *McKevitt* did not foreclose the potential existence of a journalistic privilege based upon federal common law or state law[2]. The Court disagrees.

## A. No Federal Common Law Journalistic Privilege Applies

In *Branzburg v. Hayes*, 408 U.S. 665, 683 (1972), the United States Supreme Court denied the existence of a federal reporter's privilege with regard to confidential sources, rooted in the First Amendment. Pursuant to *Branzburg*, the Seventh Circuit made

---

[2] In addition to its argument that, pursuant to Seventh Circuit caselaw, such privileges do not exist, the City argues that Mr. Conlisk is not truly a member of the media. Instead, the City claims that Mr. Conlisk is a "lobbyist, publicity agent, or propagandist more than that of an independent journalist." City's Resp. at 13. Mr. Conlisk vehemently denies the labels, as well as the City's suggestion that he has somehow thrust himself into the middle of this dispute by testifying as to the authenticity of the video of Mr. Thayer's arrest at Mr. Thayer's criminal trial. The Court agrees that the City's accusations are unsupported and are an unnecessary distraction to the core issues presented by this motion.

clear that the case for such a privilege was even less defensible when non-confidential sources were involved. *McKevitt,* 399 F.3d at 532-33 (enforcing subpoena against third-party journalists). Acknowledging that other Circuits had continued to recognize a reporter's privilege, despite the holding in *Branzburg,* Judge Posner stated that "the cases that extend the [reporter's] privilege to nonconfidential sources express concern with harassment, burden, using the press as an investigative arm of government, and so forth . . . Since these considerations were rejected by *Branzburg* even in the context of a confidential source, these courts may be skating on thin ice." 399 F.3d at 533 (rejecting a special subpoena standard for journalists.)

Mr. Conlisk argues that *Branzburg* and *McKevitt* do not foreclose the possibility of a journalistic privilege rooted in law outside of the First Amendment, but fails to cite a single case in this Circuit recognizing any such basis for a journalistic privilege. The Supreme Court made clear in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 68 (1938), that "[t]here is no federal general common law." *See Wilson v. O'Brien*, No. 07 C 3994, 2009 WL 763785, at *5 (N.D. Ill. Mar. 20, 2009) (stating that the movant "must do better than claim the existence of a federal common law privilege without articulating its origins.) As explained, and thoroughly analyzed, by the court in *Wilson,* though other courts- outside of the Seventh Circuit- have upheld

4

a reporter's privilege, a "review of these cases, however, shows that they all ground their privilege, at least to some degree, in the First Amendment." 2009 WL 763785, at *5[3]. The *Wilson* decision, and its analysis of the cases cited therein, is persuasive. Because Mr. Conlisk has failed to identify a legitimate legal basis as the foundation of a journalistic privilege outside of the First Amendment, no such privilege exists, pursuant to *McKevitt*. *See* 2009 WL 763785, at *6 "[t]he Seventh Circuit has chosen not to recognize a privilege without moorings independent of the First amendment and . . . this Court declines to do so here"; *see also*, *Mosely v. City of Chicago*, 252 F.R.D. 421, 425 n. 5 (N.D. Ill. 2008), *reversed on other grounds*, 252 F.R.D. 445 (N.D. Ill. 2008) ("[t]hat other circuits have recognized a reporter's privilege is not pertinent here, *McKevitt* rejected those holdings, and that is the end of the matter.")

---

[3] The *Wilson* court analyzed *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980)(federal common law privilege arising under Fed. R. Evid. 501) ; *In re Grand Jury Proceedings*, 810 F.2d 580, 586-88 (6th Cir. 1987) (adopting a First Amendment balancing test); and *Gonzales v. Nat'l Broad Co.*, 194 F.3d 29, 36, n. 2 (2d Cir. 1999) (finding privilege rooted in the First Amendment, contrary to *McKevitt*). Mr. Conlisk, like the movant in *Cuthbertson*, claims a federal common law privilege based on Federal Rule of Evidence 501. Notably, the *Cuthbertson* court recognized that this privilege was actually based on the First Amendment, as well as a Pennsylvania shield law, which is not applicable in the instant case.

5

## B. Illinois' Statutory Reporter's Privilege Does Not Apply

In addition to finding that no federal reporter's privilege applies, the Court similarly concludes that Illinois' statutory Reporter's Privilege, 735 ILCS 5/8-901 (West 2009), does not apply to this federal question case. Mr. Conlisk asserts that "*McKevitt* nowhere ruled that a state privilege law should not be considered, instead finding that the Illinois Reporter's Privilege statute could not apply in that case because "the reporters waived reliance on it." Conlisk Resp. at p 12. "

To the contrary, the *McKevitt* court expressly stated that "[s]tate-law privileges are not 'legally applicable' in federal question cases like this one[4]." 339 F.3d at 533. *See also, Dunn v. Washington County Hospital,* 429 F.3d 689, 693 (7th Cir. 2005) *Wilson,* 2009 Wl 763785, at *7 ("[T]his Court rejects Possley's argument that the IRPA applies and protects him."); *Mosley,* 252 F.R.D. at 424 (the Illinois privilege is inapplicable in federal question cases.) As such, the Court rejects Mr. Conlisk's contention that such a protection can serve as the basis for quashing the City's subpoena.

---

[4] Mr. Conlisk argues that this case is distinguishable, because it presents both federal question and state based claims. Even if the Court were to accept Mr. Conlisk's argument that the privilege should be recognized with respect to the state law claims, he fails to identify any evidence that would not be admissible with respect to the federal question claims.

6

## C. Federal Rules of Civil Procedure 45 and 26.

Having decided that no privilege applies in this case, the Court's resolution of this matter will turn upon the application of Federal Rules of Civil Procedure 45 and 26.

A party has a general right to subpoena any person to appear at a deposition or to produce documents for inspection and copying. Fed.R.Civ.P. 45. This right is not limitless, however, and Fed.R.Civ.P. 45( c) provides several express protections for individuals subject to subpoena. Under Fed.R.Civ.P. 45(c)(3)(A)(iv), upon timely motion, the issuing Court must quash or modify a subpoena that "subjects a person to undue burden." See also, McKevitt, 339 F.3d at 533 ("rather than speaking of privilege, courts should simply make sure that a subpoena duces tecum directed to the media, like any other subpoena duces tecum, is reasonable in the circumstances, which is the general criterion for judicial review of subpoenas"); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002); *EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696, 700 (7th Cir. 2002)).

The question of what is reasonable under the circumstances, of course, depends upon the particular circumstances of the case. Here, Mr. Conlisk is a non-party, which means that he is entitled to "somewhat greater protection," than would a party be in these circumstances. See *Patterson v. Burge*, No. 03 C 4433, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005). "Subpoenaed non-parties

have the right to challenge the burdensomeness and expense of responding to the subpoena, pursuant to [Rule] 45( c)." "Whether a subpoena imposes an 'undue burden' upon a witness is a case specific inquiry that turns on 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Builders Association of Greater Chicago v. City of Chicago*, No. 96 C 1122, 2001 WL 664453, at *8 (N.D. Ill. June 12, 2001)(quoting *American Electrical Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). Ultimately, the Court must "balanc[e] the burden of compliance against the benefits of the requested production," *Patterson*, 2005 WL 43240, at *1, and the "benefits of the requested production must outweigh the burden of compliance with the subpoena." *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923, 930-31 (7th Cir. 2004)(finding that revealing confidential patient records could be unduly burdensome).

Mr. Conlisk argues that compliance with the City's subpoena is overly burdensome, and that the subpoena is overly broad. The problem with Mr. Conlisk's first argument is that he has failed to articulate precisely how the City's request is burdensome. Mr. Conlisk has not claimed that the videotape and other documentary evidence the City seeks is not readily available.

Notably, many courts have found it unlikely that such productions are overly burdensome. *See, e.g., Mosley,* 252 F.R.D. at 431; *Hobley v. Burge,* 223 F.R.D. 499 (N.D. Ill. 2004).

The Court has carefully read Mr. Conlisk's Response, and notes that, beyond his flat statement that the subpoena is burdensome, Mr. Conlisk has not identified any specific burden whatsoever[5]. Instead, Mr. Conlisk asserts that compliance with the City's subpoena would "constitute an 'unwarranted intrusion' into [his] work product." Conlisk Resp. At 7. While the Seventh Circuit in *Northwestern Memorial Hospital* recognized that the relevant burden need not be an administrative burden, what Mr. Conlisk is attempting to label a "burden" is, in reality, "the articulation of the rationale courts have used to fashion a reporter's privilege." *Mosley,* 252 F.R.D. at 432. Absent a showing of actual burden, the Court is not inclined to allow Mr. Conlisk to avoid enforcement of the subpoena with a backdoor attempt to impose a privilege.

---

[5] In his Surreply, Mr. Conlisk argues that complying with the subpoena could lead to a loss of "street cred" that would "reduce his access to future civil protests and protesters," citing *Bond v. Utreras,* No. 04-C-2617, 2006 WL 1806387, at * 5 (N.D. Ill. June 27, 2006) SRply at 5. Unlike the reporter in *Bond,* Mr. Conlisk has denied any close relationship with Mr. Thayer, and he has not claimed that his work relies upon confidential sources. And unlike the demonstrated fearfulness of the residents of Stateway Gardens in *Bond,* Mr. Conlisk has failed to demonstrate a similar reluctance to come forward on the part of the anti-war protesters. Mr. Conlisk has not shown that, by complying with the subpoena he would suffer a loss of "street cred," which would burden his ability to successfully function as a reporter.

More persuasive is Mr. Conlisk's claim that the City's subpoena request is overly broad. The City seeks to obtain all video and other documents in Mr. Conlisk's possession, relating to: 1) the anti-war demonstration on March 19, 2005; 2) all efforts to stage anti-war marches on Michigan Avenue from 2003 to the present; and 3) any anti-war marches or demonstrations that took place in Chicago between 2003 and the present. This would include Mr. Conlisk's computer hard drives. The City contends that it is actually doing Mr. Conlisk a favor by drafting its subpoena so broadly, sparing him the trouble of pouring over the video, drives, and documents to find only those items responsive to a more narrowly tailored subpoena.

However well intentioned, the City's subpoena is too broad and will not be enforced as currently presented. The Court first notes that the City is already in possession of some of the evidence that it seeks from Mr. Conlisk. For example, the City concedes that it also had two videographers filming the events at Michigan and Oak on March 19, 2005. The City's argument that each videographer's positioning is different and unique is not persuasive, in light of the reasons it claims to need not just Mr. Conlisk's videotape, but all unedited footage and computer records of the event. Specifically, the City said the evidence is useful in establishing crowd size and demeanor, as well as general police responsiveness, demeanor, and dress. Certainly,

the tape already submitted by Mr. Conlisk, when combined with the video the City already possesses, is sufficient evidence to address such needs. As such, the Court denies the Motion to Compel with respect to obtaining Mr. Conlisk's unedited footage of the March 19th events[6].

Next, the City claims that it needs Mr. Conlisk's video recordings and personal observations on anti-war activity in Chicago, because he "can provide a unique and valuable perspective" on Mr. Thayer's claims. The Court agrees with Mr. Conlisk that his "perspective" has no bearing on or relevance to substantive issues in this case. As such, Mr. Conlisk's deposition will be limited to authentication of the relevant video evidence and documents produced, pursuant to this order.

However, the Court is persuaded that the City's request for Mr. Conlisk's footage of anti-war demonstrations from 2003 until the time of Mr. Thayer's arrest is relevant in this case. In his Complaint, Mr. Thayer alleges that the City has a policy of suppressing protests against the Iraq war that has existed since approximately March of 2003, and that the City implements this policy by sending large numbers of officers dressed in riot gear to intimidate both actual and potential protestors. If Mr. Conlisk possesses videotape or other evidence documenting such

---

[6] It should be noted that Mr. Conlisk denies that he possesses any additional footage of the events or subsequent in studio interview.

protests, this evidence is clearly relevant and should be produced[7]. However, the Court will not require Mr. Conlisk to turn over all of his files and computer hard-drives in order to comply with this request. Of course, Mr. Conlisk is free to take the City up on its offer to undertake the burden of sorting through all of his materials to eliminate the need for him to identify responsive materials.

To summarize, the Court concludes that the City is entitled to Mr. Conlisk's videotape of the events occurring on March 19, 2005, which it already has in its possession; whatever additional videotapes or other evidence Mr. Conlisk has in his possession documenting anti-war protests in Chicago and/or their planning from 2003 until March of 2005; and to depose Mr. Conlisk regarding the authenticity of such evidence.

---

[7] As noted above, Mr. Conlisk has offered no explanation as to why producing such materials would be overly burdensome.

## Conclusion

For the reasons explained above, the Court grants in part and denies in part the Defendants' motion to compel production of the materials sought in the subpoena.

Dated: April 30, 2009

ENTER:

*Arlander Keys*
ARLANDER KEYS
UNITED STATES MAGISTRATE JUDGE