IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDY THAYER, | ) |
| | ) |
| Plaintiff, | ) No. 07 C 1290 |
| | ) |
| v. | ) Judge John W. Darrah |
| | ) |
| RALPH CHICZEWSKI, et al. | ) Magistrate Judge Arlander Keys |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed a civil rights action against the City of Chicago and several Chicago Police Officers (hereinafter referred to as "the City"), alleging that the Defendants violated his constitutional rights, when they arrested him on March 19, 2005, near the corner of Michigan Avenue and Oak Street in Chicago. At the time of the arrest, Plaintiff had gathered with numerous protesters to voice their dissent about the war in Iraq -- despite the fact that the City had denied Plaintiff and the protesters a permit to march in the immediate area.

In addition to the claim that his arrest was unconstitutional, Plaintiff alleges that the City has a general policy of suppressing protests against the Iraq war. Plaintiff claims that the City pursues this policy by deploying large numbers of officers, dressed in intimidating riot gear, to anti-war demonstrations, and that the deployment is unjustified by the threat the protesters pose to either safety or traffic flow.

In the present Motion to Compel, the City is seeking to discover the numerous emails that Plaintiff admittedly sent from his AOL email accounts[1] regarding the events of March 19, 2005. At his deposition, Mr. Thayer admitted that he sent and received emails about whether and when the protest was transformed into a "press conference," whether the potential protesters were scared off by the large numbers of police officers, and his own purported mental anguish resulting from his arrest and the altercation. Mr. Thayer explained, however, that he has deleted much of his older email communications, due to storage limitations, and that the responsive emails no longer exist.

On May 22, 2009, the City issued a subpoena to a third party, AOL, for email messages from Mr. Thayer's AOL email accounts. The City's subpoena identified several keywords for AOL to use to identify the relevant email. After Plaintiff's counsel objected to the breadth of this subpoena, the City attempted to negotiate a narrowed subpoena.

On June 1, 2009, AOL objected to the City's subpoena as improperly served, and in violation of the Stored Communication Act, 18 U.S.C. § 2702 (a)(1)(2). Notably, the objection arrived in the form of a letter signed by an AOL paralegal-not counsel for AOL. In the letter, AOL's paralegal expressed her legal opinion that: 1) a subpoena from the District Court in Illinois

---

[1] Mr. Thayer purportedly has five separate email accounts.

does not have extraterritorial power over records existing in Virginia- the location of the AOL Custodian of Records[2]; and 2) the Stored Communications Act ("SCA") prohibits AOL from disclosing the contents of its subscribers' emails, except under specific circumstances, which did not (according to AOL's paralegal) apply.

　　The Court granted Plaintiff's Motion to Quash the Subpoena on June 5, 2009, on the grounds that the subpoena was overly broad, and suggested that the parties attempt to negotiate a narrower subpoena. The City contacted Plaintiff's counsel to do just that, but was told that the negotiations would have to wait until Plaintiff's counsel finished an upcoming trial. On June 25, the City forwarded to Plaintiff's counsel a proposed modified subpoena, which counsel rejected on July 6, 2009. The City then issued a revised, narrower subpoena on July 9, 2009, which was served on AOL's registered agent. AOL's paralegal responded on July 16, 2009, reiterating AOL's previous objections and further explaining that, based on her *personal knowledge,* "AOL does not maintain any email on its computer servers that is not directly accessible to the user of the mail screen name." See Def.'s Ex. 13, AOL's July 16, 2009 Objection Letter.

---

　　[2] In their jointly-filed Response Brief, Plaintiff and AOL abandoned their claim that this Court lacks jurisdiction to enforce the subpoena and that the subpoena was improperly served.

3

On July 31, 2009, the City filed the present Motion to Compel. At the hearing on the Motion- at which AOL failed to appear- the Court directed AOL to file its Response to the Motion on or before August 19, 2009. Instead, Plaintiff's counsel filed a joint response to the Motion on behalf of both Plaintiff and AOL on August 18, 2009. In the Response Brief, Plaintiff and AOL both flatly denied having access to the requested emails, and sought to recover its reasonable fees and costs from the City, for having to respond to "a motion to compel documents that the city knew did not exist." Pl. And AOL's Resp. at 11.

Then, at almost 5 p.m. on Friday, August 21, 2009, counsel for Plaintiff faxed a letter "promptly" notifying the Court of a "recent development." Seemingly contrary to counsel's and AOL's previous assertions that AOL lacked the capability to access emails deleted from subscribers' accounts, counsel stated that AOL does, in fact, have emails responsive to the City's subpoena. It is not apparent from AOL's affidavits or the jointly-filed Response Brief whether anyone with sufficient knowledge of AOL's operations was ever consulted before Plaintiff's counsel and AOL made the prior misrepresentations to the Court. Neither Plaintiff's counsel nor counsel for AOL (or even its paralegal) explained to the Court or the City the circumstances surrounding this about face.

The Court was also left with the distinct impression that

Plaintiff's Counsel was playing fast and loose with the phrase "promptly notify." Counsel did not indicate when AOL notified her about the existence of the emails or whether she even bothered to ask about them before filing her brief; instead, she coyly states that she returned a call to AOL about their existence at 9:30 a.m. on August 21, 2009. And Counsel certainly took her time in letting the City in on the news. Despite being in possession of information that directly contradicted the "facts" set forth in the brief that she prepared on behalf of both her client and AOL, and despite being in depositions on this matter with the City's attorneys for the better part of the day, Plaintiff's Counsel waited until almost 6 p.m. on the Friday before the City's Reply Brief was due before notifying the City about the emails[3].

On August 27, 2009, after the City had filed its Reply brief, and without leave of Court, Plaintiff's counsel filed a Sur-reply, in which she sought to dispel the "wholly groundless accusations of misconduct and false statements on the part of Plaintiff, Plaintiff's counsel and AOL . . . and to share additional information Plaintiff learned today from AOL regarding [Plaintiff's] emails." The information consisted of an affidavit

---

[3] The Court presumes that Plaintiff and AOL are withdrawing their request to be awarded reasonable fees and costs incurred in "responding to a motion to compel documents that the City knew did not exist." Joint Resp. at p 11.

executed by a paralegal from AOL, to which she attached one of Mr. Thayer's email, dated January 2004. AOL's paralegal claims that, based on her personal knowledge, this is the only email in AOL's possession from the time period specified in the subpoena. AOL has made no attempt to identify or verify the extent of its paralegal's personal knowledge.

Rather than clearing up any confusion regarding AOL's ability to retrieve Plaintiff's deleted emails, the improperly submitted Sur-reply only added to the confusion, since Plaintiff's counsel had earlier represented that AOL had emails- plural- dating back to 2003. Conspicuously absent from the additional information was any response to the City's expert witness's opinion that AOL's assertions regarding its inability to retrieve the emails in question are incredible. The City's expert even went so far as to suggest how AOL could go about retrieving the emails and how long such a search would take (less than one hour). See Ex. D to Def's Reply, ¶6.

Most troubling to the Court was the cavalier attitude exhibited by AOL in responding to the City's subpoena and this Court's order to file a response to the City's Motion to Compel. Despite having been served with subpoenas on two occasions, and a Court order to respond, AOL chose instead to communicate to the Court- in a nonbinding fashion- through Plaintiff's counsel. At the Court's September 9, 2009 hearing on Plaintiff's Motion for

Leave to file a Sur-Reply, the Court, frustrated by the incomplete and often conflicting stories regarding the emails and the resulting delays, expressed to Plaintiff's counsel its extreme displeasure with AOL and counsel's misrepresentations regarding the existence of the emails. Since Plaintiff's counsel had taken it upon herself to act as AOL's spokesperson, the Court suggested that she transmit the news to AOL.

On September 10, 2009, in an obvious response to the Court's remarks, AOL submitted a letter, through its own attorney at Kirkland & Ellis, contending that AOL has "done nothing but act in good faith in this manner." See AOL's Letter dated September 10, 2009. While the letter does little to salvage AOL and Plaintiff's credibility, it does shed some light on how and why conflicting information was presented to the Court.

In the letter, AOL states, repeatedly, that it receives over 350 civil subpoenas each year[4]. So, when AOL received the City's two subpoenas, it raised its standard objection that AOL does not divulge emails to a third party in response to a civil subpoena. However, when AOL received the City's Motion to Compel on July 31, 2009, it asked its information technology security group to pull any and all emails of Mr. Thayer. The letter indicates that

---

[4] The letter does not explain, however, why 350 subpoenas would so cripple a multi-billion dollar corporation with over 6,000 employees that it resorts to ignoring court orders and proffering incomplete and inaccurate information, which has compounded costs and needlessly delayed this litigation.

7

AOL unearthed some emails, informed Plaintiff's counsel of their existence, but did not look to see if the emails were responsive to the subpoena, apparently because Mr. Thayer said that the emails he had in his possession were not responsive to the subpoena. AOL's letter does not explain why AOL thought it prudent to communicate exclusively with Plaintiff's counsel in response to the Motion to Compel, or why it would rely upon a party with a vested interest in the outcome of the litigation to determine whether the emails it had in its possession were responsive to the subpoena.

AOL's September 10th letter then concedes that Plaintiff's counsel inexplicably waited to ask AOL whether it had found email responsive to the subpoena until August 20, 2009- two days **after** she had filed a brief on behalf of both AOL and Plaintiff insisting that neither AOL nor Plaintiff had any emails responsive to the subpoena. To be clear, AOL allowed Plaintiff's counsel to file with this Court a brief denying the existence of emails, when neither AOL nor Plaintiff had any sound basis for believing that representation to be true. Stories of missing passwords and forgotten accounts do little to absolve AOL and Plaintiff of their responsibility to actually determine whether they possess emails responsive to the subpoena, and to confirm statements made in legal briefs filed with a court of law. Whether AOL or Plaintiff's counsel was more irresponsible in this

regard is unclear.

AOL's September 10th letter concludes by labeling the City's expert witness affidavit as being unfounded and untrue. AOL has not, however, submitted its own affidavit from an individual who professes to be familiar with and knowledgeable of AOL's policies and operations. In light of the foregoing, the Court is not inclined to reject Mr. Reisman's affidavit without further discovery.

AOL's conduct has unnecessarily delayed these proceedings- including the postponement of the trial-- and compounded costs. Perhaps AOL will reevaluate its policy of responding to subpoenas and court orders without meaningful analysis. AOL is hereby ordered to show cause as to why it should not be held in contempt of court for its failure to file a response to the City's Motion to Compel, as ordered by the Court. The show cause answer is to be filed by September 18, 2009. Hearing on the show cause order to be held on September 30, 2009 at 9 a.m. The City is given leave to immediately commence discovery on AOL regarding its ability to retrieve Plaintiff's deleted emails, AOL'S policies regarding a subscriber's right to request and/or demand such emails, the disingenuousness in its shifting positions in this matter, as well as the number of emails that were sent from and received in Plaintiff's accounts during the period described in the subpoena. AOL is further ordered to designate a witness to

be deposed by the City, with full knowledge of its systems, capabilities, and policies relating to its abilities and obligations in retrieving emails that have been deleted from customer accounts. In particular, such witness must be able to address the opinions of the City's expert, Mr. Reisman. If AOL wishes to rely upon declarations of its paralegals, it must first establish their credentials as knowledgeable, expert witnesses. All further AOL submissions must be signed by an officer of the Court. Discovery is hereby extended to October 16, 2009, for the limited purpose of resolving the issue of the deleted emails. The City's reasonable fees and costs for this discovery shall be borne by AOL.

 Plaintiff's counsel, whose name the Court declines to disclose, is avoiding sanctions, because the Court knows her to be a young, intelligent, but relatively inexperienced attorney who zealously, but respectfully advocates on behalf of her clients. It appears that counsel has, in her zeal as an advocate on behalf of her client, and perhaps unwittingly, allowed herself to become an advocate for AOL in this matter, which could result in a conflict of interests between her client and AOL and has contributed to needless confusion and delay in this case. The Court does not wish to discourage counsel from zealously advocating on behalf of her clients. However, in this instance, counsel has come dangerously close to crossing the line between

zealous advocacy and misconduct. The Court's written decision should serve as a sufficient sanction, and provide notice that the questionable tactics employed in this case serve only to undermine an attorney's greatest asset, her reputation.

## DISCUSSION

### I. The Stored Communications Act Does Not Prevent The City From Discovering Relevant Documents.

The Stored Communications Act (the "SCA") prohibits a "person or entity providing an electronic communication service to the public" from "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service.[5]" 18 U.S.C. § 2701(a)(1). Plaintiff and AOL have cited numerous cases supporting their position that the SCA prohibits an internet service provider, like AOL, from divulging to a civil litigant the contents of any communication that is carried, maintained, or stored on or by the service. *See, e.g., Federal Trade Commission v. Netscape Communications Corp.*, 196 F.R.D. 559, 561 (N.D. Cal. 2000); *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1448 (Cal. App. 2006). The Court agrees that, although decisions analyzing the SCA have defined its parameters in sometimes competing ways, most courts have

---

[5] The SCA also prohibits such entities from divulging communications which are "carried or maintained on that service," 18 U.S.C. § 2702(a)(2), and from divulging subscriber or customer information or records to governmental entities. 18 U.S.C. § 2702(a)(3).

concluded that third parties cannot be compelled to disclose electronic communications pursuant to a civil- as opposed to criminal-- discovery subpoena. *See e.g., In re Subpoena Duces tecum to AOL, LLC.*, 550 F. Supp.2d 606, 611 (E.D. Va. 2008) ("State Farm's subpoena may not be enforced consistent with the plain language of the Privacy Act[6] because the exceptions enumerated in § 2702(b) do not include civil discovery subpoenas.")

These holdings are consistent with Congress's intention, in enacting the SCA, to protect from disclosure private, personal information that happens to be stored electronically. *Id.* at 610. "The Privacy Act creates a zone of privacy to protect internet subscribers from having their personal information wrongfully used and publicly disclosed by 'unauthorized private parties.'" *Id. citing* S.REP. NO. 99-541, at 3(1986), as *reprinted n* 1986 U.S.C.C.A.N. 3555, 3557. And it is clear that, at the heart of these decisions, lies the courts' interest in advancing the legislative intent to protect from unauthorized disclosure electronically-stored documents, which would have otherwise remained private. *See, Id. citing Theofel v. Farey-Jones*, 359 F.3d 1066, 1073-74 (9th Cir. 2004).

---

[6] The Stored Communications Act is one of three Titles of the Electronic Communications Privacy Act, also referred to as the Privacy Act.

12

These holdings are useful to the extent that the City's subpoena, if enforced, would result in the production of such private and personal documents. The instant case is distinguishable, however, because the City's subpoena is targeting, largely, documents that Mr. Thayer would be required to produce if he had not deleted them from his email accounts. But while Mr. Thayer cannot retrieve these emails from his accounts, the City has presented evidence indicating that AOL does have access to these deleted emails. Importantly, the SCA permits the disclosure of otherwise protected communications, if the subscriber, or the author or the intended receiver of such communications gives his consent[7]. 18 U.S.C.§ 2702(b)(3). Thus, if Mr. Thayer consented to the disclosure, the SCA would not prevent AOL from divulging the emails[8] responsive to the City's subpoena- emails containing communications that likely go to the heart of Plaintiff's damages claim.

The issue becomes the lengths to which the Court can go to compel Mr. Thayer to assist the City in retrieving these deleted emails from AOL. A discussion of the decision in *Flagg v. City*

---

[7] The SCA's consent exception differs slightly, depending upon whether the emails are stored by an electronic communication service ("ECS") or a remote computing service ("RCS"). The parties have not offered evidence on this point, and the difference is not material in this case since Mr. Thayer is both the subscriber and either the author or recipient of the emails in question.

[8] Assuming, of course, that they exist.

*of Detroit, et al.*, 252 F.R.D. 346 (E.D. MI. 2008) is instructive.

In *Flagg*, the defendant city moved to prevent Plaintiff from discovering communications exchanged among certain city officials and employees via city-issued text messaging devices. While the defendant did not store copies of these communications, the city's non-party service provider, SkyTel, purportedly did have records of these communications. The plaintiff filed a third-party subpoena directed at SkyTel, which objected, claiming that the SCA did not recognize an exception for civil subpoenas and barred Skytel from divulging the emails to the plaintiff. The court addressed the issue by directing the plaintiff to instead submit a Fed. R. Civ. P. 34 request for production upon the defendant city. *Flagg*, 252 F.R.D. at 352. Rule 34(a) permits parties to request the production of documents and other items that are "in the responding party's possession, custody, or control." *Id.* quoting Fed. R. Civ. P. 34(a).

In determining whether the city had the requisite control over the communications in Skytel's possession, the court discussed the relevant caselaw, which holds that control exists: 1) where a contractual provision grants a party the right to access the requested materials, *see Anderson v. Cryovac, Inc.*, 862 F.2d 910, 928-29 (1st Cir. 1988); 2) where the materials are in the possession of the party's agent, such as its attorney,

14

see, e.g., *Commercial Credit Corp. v. Repper,* 309 F.2d 97, 98 (6th Cir. 1962); 3) where the materials are in the custody of the party's employee, *Riddell Sports, Inc. v. Brook,* 158 F.R.D. 555, 558 (S.D.N.Y. 1994); and 4) most broadly, where a party has "the practical ability to obtain the documents from a nonparty to the action." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.* 171 F.R.D. 135, 146 (S.D.N.Y. 1997)[9].

The *Flagg* court noted that the parties had submitted little evidence regarding Skytel's obligation to furnish the text messages to the city. 252 F.R.D. at 354 (noting that the city had failed to produce documentation revealing the terms of its agreement with Skytel.) However, the city had flagrantly stated that it was refusing to give its consent to enable Skytel to produce the text messages. The court reasoned that "if the City can *block* the disclosure of SkyTel messages by *withholding* its *consent*, it surely follows that it can *permit* the disclosure of these communications by granting its consent," and that this

---

[9] Courts in this Circuit have adopted an expansive interpretation of when a document is in a party's control. "A party has control or custody of a document or thing when he has the legal right to obtain the document, even though in fact he has no copy.'" *Engel v. Town of Roseland,* 2007 WL 2903196, at *3 (N.D. Ind. Oct. 1, 2007) quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2210, p. 621 (1970); *see also Appleton Papers Inc. v. George A. Whiting Paper Co.,* 2009 WL 2408898, at *4 (E.D. Wis. July 31, 2009) (interpreting control under Rule 34 broadly, explaining that "[i]f a non-party will directly receive the benefit of an award, then it is unjust that it can frustrate the discovery process . . . by refusing to furnish documents in its possession.")

acknowledged power constituted the requisite "control" *Flagg*, 252 F.R.D. at 355. The court found support for its conclusion in Michigan law, which required the city to maintain its public records for public inspection, reasoning that some of the text messages must constitute public records.

Finally, the *Flagg* court acknowledged the procedural reality of the case before it; the plaintiff had not yet filed a Rule 34 Request, and had instead chosen to file a third party subpoena. The court recognized that there was little precedent establishing a court's power to compel a party to consent to the disclosure of materials pursuant to a third party subpoena, *Id.* at 366, and again directed the plaintiff to file a Rule 34 request for production instead.

In the instant case, the City of Chicago, like the plaintiff in *Flagg*, has chosen to file a third party subpoena. But *Flagg* is distinguishable in two important respects; first, unlike the text messages in *Flagg*, which were authored by the City's employees, the emails in this case were either authored by or sent to Mr. Thayer, who is also the AOL subscriber. As such, divulging the emails is not as problematic in the case at bar. Next, the Court has just learned, in AOL's September 10th letter, that Plaintiff has authorized AOL to divulge the responsive email in its possession. *See* AOL's letter dated September 10, 2009. It is unclear whether Mr. Thayer has consented to AOL divulging

only that specific email, or has generally authorized AOL to release all responsive emails; Mr. Thayer has not indicated that he would object to the disclosure of all relevant emails that it is later determined exist. At this juncture, the Court presumes that Mr. Thayer-- as the Plaintiff who initiated this litigation and put at issue his mental state, impressions, and the reasonableness of the City's March 19th response- has given his consent to AOL to divulge all responsive emails. As such, the Court need not opine on the applicability of the *Flagg* decision.[10]

## II. The City's Subpoena is Properly Tailored to Discover Relevant, Non-Privileged Material.

Plaintiff argues that the City's subpoena is overly broad and improperly seeks privileged, irrelevant materials. The City notes that Plaintiff repeatedly declined the City's invitation to participate in crafting a more narrowly-tailored subpoena.

---

[10] Courts are not in the business of issuing advisory opinions. However, prior to the receipt of AOL's September 10th letter, the Court was never informed that Mr. Thayer had consented to AOL to divulge his emails. The parties and the Court spent considerable time and resources evaluating the application and scope of the SCA to this matter. In light of the delay caused by AOL and Plaintiff's counsel's misrepresentations to this Court, and in an effort to avoid foreseeable future delays, the Court thought it most prudent to retain this portion of the Opinion.

17

First, the Court rejects Plaintiff's argument that the City's subpoena should be denied, because it might unearth privileged documents. The City has acknowledged that a pre-disclosure screening would be appropriate. As such, the Court directs AOL to produce all responsive emails to Plaintiff, who shall create a privilege log describing such documents and identifying the applicable privilege. Plaintiff, in turn, will forward all non-privileged, responsive emails to the city. In this regard, the Court rejects Plaintiff's insistence that any communications directed to or from Plaintiff's counsel's law firm should be automatically excluded from the City's subpoena. Not every communication with an attorney is privileged and Plaintiff, like all litigants, must establish that a privilege applies before withholding relevant, responsive communications.

In addition, the Court finds that the City has made the appropriate adjustments to the subpoena to limit its scope to those communications concerning the events leading up to and occurring on March 19, 2005. The Court agrees that the City has successfully narrowed its subpoena by: 1) reducing the time period to only those emails exchanged between 2003 and 2006; and 2) eliminating more general search terms, such as "constitution, constitutional, civil liberties, human rights" etc., and replacing them with fewer, and more specific terms, such as the

proper names[11] of people, places and organizations directly related to the events on March 19, 2005.

The Court appreciates Plaintiff's concern that the City has included "CCAWR" as a search term, because Mr. Thayer has used the acronym as part of one of his email addresses—"ccawr@aol.com." As such, the subpoena would include every email sent from that account. The City notes, however, that the acronym stands for the "Chicago Coalition Against War and Racism," a group that played a central role in the events on March 19, 2005. The CCAWR, of which Mr. Thayer is a part, applied for and was denied the permit to march down Michigan Avenue, and called for people to gather at Oak and Michigan. As such, the City argues, it is conceivable that all communications to and from this email address are relevant to the lawsuit. In an effort to ensure the relevancy of the documents generated by the search, the Court will require Plaintiff to produce only those non-privileged emails that utilize the acronym CCAWR in the text of the document.

### III. There is no Credible Evidence that AOL Does Not Have Access to Communications Responsive to the Subpoena

AOL has represented that it does not have access to any of

---

[11] An obvious exception would be the City's inclusion of the term "horse." Nevertheless, the Court finds that the fact that Mr. Thayer, at his depositions, repeatedly criticized the City's use of horses at demonstrations sufficiently increases the likelihood that a search for the term would generate relevant communications.

19

Mr. Thayer's deleted AOL emails; that it has access to some of those emails; and then, most recently, that it has access to only one, non-relevant email. Despite the explanations provided by AOL's September 10th letter, neither Plaintiff nor AOL has submitted an affidavit properly addressing the affidavit of the City's expert witness, Andrew Reisman. In Mr. Reisman's opinion, "AOL almost certainly maintains a disaster recovery system in the event that any of its email servers were to fail, such that in the event of a failure AOL could restore the affected email accounts to their previous state. Such disaster recovery systems generally are designed so that data is stored on portable devices, such as backup tapes." Ex. D to Def's Reply at ¶9. The above-ordered discovery should resolve this issue, and does not provide a basis for denying the City's Motion.

## CONCLUSION

For the reasons set forth above, the City's Motion to Compel is Granted.

Dated: September 11, 2009

ENTER:

_____
ARLANDER KEYS
United States Magistrate Judge